HUGHES, J.
 

 | ¡¡This is an appeal from a judgment reducing a former husband’s spousal support obligation. For the reasons that follow, we affirm the district court judgment in part, amend in part, and remand for further proceedings.
 

 FACTS AND PROCEDURAL HISTORY
 

 The parties in this case were married on November 29, 1980; one child was born of the marriage on September 26, 1984. Following the breakup of the marriage, Mr. Prestenback was ordered by a July 10, 2003 judgment of the district court to pay $740.00 in child support and $1,000.00 in spousal support, monthly. When Mr. Prestenback’s child support obligation terminated, an interim award of spousal support to Ms. Prestenback was fixed at $1,740.00, monthly, by stipulated judgment dated October 29, 2003. Thereafter, the issue of final periodic spousal support was heard by the district court; judgment was rendered on July 21, 2004 setting spousal support at $1,000.00 per month.
 

 On June 13, 2006, Mr. Prestenback filed a rule seeking to terminate and/or modify the spousal support award. A heai'ing officer for the district court heard the matter on August 26, 2006 and recommended continuance of the spousal support award as previously fixed. Mr. Prestenback objected to the recommendation of the hearing officer and the matter was set for trial before the district court judge on April 4, 2007. Following trial, judgment was signed on April 18, 2007 reducing the amount of spousal support from $1,000.00 to $540.00 per month, made retroactive to the date of the filing of the rule on June 13, 2006. The district court further found that Mr. Prestenback had overpaid spousal support since June 13, 2006 in an amount totaling $4,416.04, and ordered this amount recoverable by him “in the form [..¡of reducing his monthly spousal support payments by $60.00 each month, until the sum is paid in full.”
 

 Ms. Prestenback appeals this judgment, urging the following assignments of error: (1) the district court misapplied the law regarding modification of final periodic spousal support by offsetting Mr. Presten-back’s spousal support obligation due to Ms. Prestenback receiving social security disability benefits; (2) the district court misapplied the law embodied in LSA-C.C. arts. Ill and 114 in that it failed to consider the income and means of Mr. Presten-back to pay final periodic spousal support in ruling that this was not a factor to be considered in a request for modification or termination of spousal support contrary to the comments of Article 114; (3) the district court misapplied the law embodied in Article 112 in that it failed to consider all relevant factors in determining the entitlement, amount, and the duration of final periodic spousal support; and (4)
 
 the
 
 district court abused its discretion in disallowing certain expenses of Ms. Presten-back in that it did not consider her entire
 
 *175
 
 medical condition, and the jurisprudence allowing the court to consider the standard of living of the parties dui’ing the marriage.
 

 LAW AND ANALYSIS
 

 In this case Ms. Prestenback was found not to be at fault in the breakup of her marriage. Further, the award of spousal support by the district court necessarily included a finding that Ms. Prestenback is in need of support. Neither of these findings of fact by the district court have been appealed. The issues raised by this appeal are limited to whether the district court’s calculation of Mr. Prestenback’s spousal support obligation to Ms. Prestenback was correct.
 

 I^The district court judge delivered the following reasons for judgment in open court:
 

 I am looking in the Civil Code and under Article 112, the Code states that when a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support.
 

 This is a rule to decrease, actually to modify or to terminate the award of periodic support, which this Court initially awarded $1,000 per month payable to Ms. Prestenback. Based upon the evidence submitted, ... the Court finds that there has been a material change in circumstances, and that being the Social Security benefits that Ms. Prestenback is currently being paid. According to her affidavit, that amount is $1,035.50 minus $93.50 for Medicare insurance, which comes to a net amount of $942.
 

 Our jurisprudence defines ... needs ... [as] being housing, food, [and] clothing.
 

 Looking at the affidavit of income and expenses listed by Ms. Prestenback, the Court finds that some of those items listed are not needs, not in a sense of that definition as provided by our jurisprudence.
 

 And just for the record, also, the Court is not considering the income or means of Mr. Prestenback for purposes of the decision. And that reason being that this is not for an increase in alimony, wherein that may have been relevant. But to this particular hearing, it’s not relevant, in this Court’s opinion, in determining what the needs are of Ms. Prestenback.
 

 Support or alimony, in this Court’s opinion, was not fashioned as a punishment to the obligor spouse. It’s not a form of punishment. And I think that’s why the drafters of the Civil Code specifically put in the language “needs.” Because otherwise, ... the obligor spouse would be relegated to having to pay basically any and everything according to whatever his income is. They specifically said “needs” to limit the amount of support, if any, that would be paid to just that. And those things, the needs covering housing, clothing, [and] food. And also, we include in that the medical.
 

 Going through the affidavit of Ms. Prestenback, the Court finds that the lawn service of $70 is not a need, and therefore, will deduct that amount. That the amount of $100.57 for cablevision is not a need, and will deduct that amount. That the amount for a cell phone, $76.87 is not a need, and will deduct that amount. That there is no requirement, that this Court is aware of, that dental care or eye care is a need to be provided, therefore, those amounts will be deducted. Also, the entertainment and gifts of $50 and $40 respectively, will be deducted. As well as the $75 for cosmetics, $40 for the haircuts,
 
 *176
 
 the $12.50 for AARP, also the $50 for the taxes owed to the federal government, and the $50 for attorney fees. The Court is specifically disallowing the attorney fees based upon |5the fact that prior to this rule being filed, Ms. Pres-tenback received several lump sums of money. And at that time, her attorney fees were an obligation; she could have taken care of that amount with that money, rather than some of the other expenditures that were made.
 

 Also with regard to the food and household supplies, the Court will note that in the record of these proceedings that have been admitted into evidence, at the time that Ms. Prestenback filed, she also submitted an income and expense affidavit for pauper status. In that income and expense affidavit at that time, she listed her food and household supplies at $600. And I think that was at that time for two people, her and her son. The Court will find that the amount of $450 for herself is excessive and reduce that by $100.... So the amount for the food and household supplies will be $350.
 

 After adding up those amounts that have been disallowed, rounding that figure off to the nearest dollar, the Court finds that that amount comes to $760 to the nearest $10.... And when you subtract that amount from the total amount listed for Ms. Prestenback’s expenses, that being $2300, then the total amount of support owed is $540. So the Court is reducing the amount of spousal support to $540 per month.... Retroactive according to the Code to the date of filing.
 

 It is within the sound discretion of the district court to allow and fix the amount of alimony, to be exercised not arbitrarily or willfully but with regard to what is just and proper under the facts of the case.
 
 Wascom v. Wascom,
 
 97-0547, p. 9 (La.App. 1 Cir. 6/29/98), 713 So.2d 1271, 1275-76,
 
 writ denied,
 
 98-2028 (La.11/6/98), 728 So.2d 391. Such awards should not be disturbed absent a clear abuse of that discretion.
 
 Wascom v. Wascom,
 
 97-0547 at p. 5, 713 So.2d at 1274;
 
 Pierce v. Pierce,
 
 41,718, p. 3 (La.App. 2 Cir. 12/13/06), 945 So.2d 908, 910.
 

 A claim for spousal support is governed by LSA-C.C. arts. Ill and 112, which provide as follows:
 

 Art. 111. Spousal support; authority of court
 

 In a proceeding for divorce or thereafter, the court may award interim periodic support to a party or may award final periodic support to a party who is in need of support and who is free from fault prior to the filing of a proceeding to terminate |fithe marriage in accordance with the following Articles
 
 [1]
 

 Art. 112. Determination of final periodic support
 
 [2]
 

 
 *177
 
 A. When a spouse has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support in accordance with Paragraph B of this Article.
 

 B. The court shall consider all relevant factors in determining the amount and duration of final support. Those factors may include:
 

 (1) The income and means of the parties, including the liquidity of such means.
 

 (2) The financial obligations of the parties.
 

 (3) The earning capacity of the parties.
 

 (4) The effect of custody of children upon a party’s earning capacity.
 

 (5) The time necessary for the claimant to acquire appropriate education, training, or employment.
 

 (6) The health and age of the parties.
 

 (7) The duration of the marriage.
 

 (8) The tax consequences to either or both parties.
 

 C. The sum awarded under this Article shall not exceed one-third of the obligor’s net income.
 

 Article 112 bases an award of spousal support on the needs of the claimant spouse and the ability of the other spouse to pay, subject to the qualifying rules in Article 112 and the following articles.
 
 See Pierce v. Pierce,
 
 41,718 at p. 2, 945 So.2d at 910.
 
 See also
 
 Kenneth Rigby,
 
 The 1997 Spousal Support Act,
 
 58 La. L.Rev. 887, 889 (1998). Article 112 provides that in determining the entitlement, amount, and duration of final support, the court “shall” consider all relevant factors; however the article further states that those factors “may” include the nine enumerated factors. Thus it follows from a plain reading of the Article 112 that a court need not consider all of the listed factors, as the. consideration of all of the listed factors is no longer mandatory, but discretionary.
 
 [3]
 
 The phrasing of Article 112 also clearly indicates that a court may consider factors that are not listed, provided they are relevant to the entitlement, amount, and duration of final support.
 
 See Gremillion v. Gremillion,
 
 39,588, p. 15 (La.App. 2 Cir. 4/6/05), 900 So.2d 262, 271;
 
 Knowles v. Knowles,
 
 2002-331, p. 5 (La. App. 3 Cir. 10/2/02), 827 So.2d 642, 646.
 

 In an action for spousal support, the claimant spouse has the burden of proving insufficient means of support. Until need has been demonstrated, the other spouse’s financial means are irrelevant.
 
 Wascom v. Wascom,
 
 97-0547 at p. 4, 713 So.2d at 1273.
 

 
 *178
 
 “Means” include both income and property. In deciding entitlement and amount of alimony, the court should consider, among other things: the income, means and assets of the spouses; the financial obligations of the spouses, including their earning capacities; the time necessary for the recipient to acquire appropriate education, training or employment; and the health and age of the parties.
 
 Wascom v. Wascom,
 
 97-0547 at pp. 4-5, 713 So.2d at 1274. Although “means” include both income and property, courts usually determine initially the monthly income to be attributed to the Isdaimant spouse and compare this sum to the spouse’s monthly expenses. If the income equals, or is greater than the expenses, then no further inquiry should be necessary. However, if the expenses exceed the income, the court will need to decide to what extent the spouse should be made to deplete the property before being entitled to alimony.
 
 Wascom v. Wascom,
 
 97-0547 at p. 8, 713 So.2d at 1275. '
 

 “Support” means a sum sufficient for the claimant spouse’s maintenance, which includes the allowable expenses for food, shelter, clothing, transportation expenses, medical and drug expenses, utilities, household maintenance, and the income tax liability generated by alimony payments. This includes mortgage payments, utilities, and other related expenses. Expenditures for newspapers, gifts, recreation, vacation, and church tithes are not to be considered in awarding permanent alimony. Similarly, expenses attributable to entertainment, including cable television service, are not necessary for a spouse’s maintenance and should not be considered in fixing permanent alimony.
 
 Mayes v. Mayes,
 
 98-2228, pp. 6-7 (La.App. 1 Cir. 11/5/99), 743 So.2d 1257, 1262.
 
 See also Bernhardt v. Bernhardt,
 
 283 So.2d 226, 229 (La.1973);
 
 [4]
 

 McCarty v. McCarty,
 
 2000-2212, p. 5 (La.App. 4 Cir. 9/19/01), 798 So.2d 195, 198,
 
 writ denied,
 
 2001-3255 (La.2/6/02), 808 So.2d 346;
 
 Dabney v. Dabney,
 
 603 So.2d 786, 790 (La.App. 1 Cir.),
 
 writ denied,
 
 607 So.2d 563 (La. 1992);
 
 Shenk v. Shenk,
 
 563 So.2d 1000, 1004 (La.App. 4 Cir.1990);
 
 Fusilier v. Fusilier,
 
 464 So.2d 1068, 1070 (La.App. 1 Cir.1985);
 
 Arabie v. Arabie,
 
 447 So.2d 22, 24 (La.App. 1 Cir.1984);
 
 Tracy v. Tracy,
 
 388 So.2d 66, 67 (La. App. 1 Cir.1980).
 

 Social Security Disability Benefits
 

 In her first assignment of error, Ms. Prestenback contends the district court erred in considering as “income” the social security disability benefits that she receives, citing
 
 January v. January,
 
 2003-1578 (La.App. 3 Cir. 4/7/04), 876 So.2d 98, and
 
 Davis v. Davis,
 
 2002-0088 (La.App. 3 Cir. 5/8/02), 816 So.2d 985. In these cases, the Third Circuit held that “there is no statutory authority for an offset [on account of social security disability benefits] in favor of a former spouse who has been ordered to pay permanent alimony”
 
 (Davis v. Davis,
 
 2002-0088 at p. 2, 816 So.2d at 986), and “social security benefits are not income susceptible of offsetting a spouse’s final support obligation”
 
 (January v. January,
 
 2003-1578 at p. 6, 876 So.2d at 102). In support of this ruling, the Third Circuit stated:
 

 
 *179
 
 [T]he Social Security Act sets forth a method for calculating disability benefits, which includes consideration of certain factors, such as the recipient’s earned and unearned income, as defined in the Act. The [Darns
 
 v. Davis
 
 ] panel observed that, according to 42 U.S.C. § 1382a(a)(2)(E), alimony payments are considered unearned income; as such, when the Social Security Administration determines the amount of benefits to be disbursed in disability cases, it ascertains whether the disabled person is receiving spousal support and, if so, this “unearned income” is factored into the amount of benefits awarded. The panel further observed that spousal support payments do not fall within the ambit of excluded income or an excluded resource pursuant to 42 U.S.C. §§ 1382a(b) or 1382(b)....
 

 January v. January,
 
 2003-1578 at p. 5, 876 So.2d at 101-2 (citing
 
 Davis v. Davis,
 
 2002-0088 at pp. 1-2, 816 So.2d at 986).
 

 However, social security benefits have previously been recognized as income for purposes of spousal support by this court.
 
 See Griffin v. Griffin,
 
 457 So.2d 790, 790 (LaApp. 1 Cir.1984) (citing
 
 Robinson v. Robinson,
 
 412 So.2d 633 (La.App. 2 Cir. 1982)).
 
 [5]
 
 In finding that social security benefits were properly classified as income, the
 
 Robinson
 
 court noted: “We construe Congressional policy, however, to allow the social security benefit received by each spouse to be considered in determining the amount of permanent alimony, whatever the legal categorization of the benefit. [The] ... Social Security Act ... expressly provides that the benefit shall be subject to legal process brought to enforce the recipient’s obligation to make alimony payments.”
 
 Robinson v. Robinson,
 
 412 So.2d at 635.
 
 [6]
 

 The question in this action is whether social security
 
 disability
 
 benefits should also be considered as income for purposes of spousal support under LSA-C.C. art. 112.
 

 The starting point in interpreting any statute is the language of the statute itself.
 
 Sullivan v. Pitre,
 
 2005-2361, p. 4 (La.App. 1 Cir. 9/27/06), 944 So.2d 632, 634,
 
 unit denied,
 
 2006-2685 (La.9/14/07), 963 So.2d 388 (citing
 
 Theriot v. Midland Risk Insurance Company,
 
 95-2895 (La.1997), 694 So.2d 184, and
 
 Touchard v. Williams,
 
 617 So.2d 885 (La.1993)).
 

 When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no |1Tfurther interpretation may be made in search of the intent of the
 
 *180
 
 legislature. LSA-C.C. art. 9. When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. LSA-C.C. art. 10. The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter. LSA-C.C. art. 11. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. art. 12. Laws on the same subject matter must be interpreted in reference to each other. LSA-C.C. art. 13.
 

 When interpreting a law, the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question that harmonizes and reconciles it with other provisions. A construction of a law that creates an inconsistency should be avoided when a reasonable | ^interpretation can be adopted that will not do violence to the plain words of the law and will cany out the intention of the lawmaker.
 
 Bunch v. Town of St. Francis-ville,
 
 446 So.2d 1357, 1360 (La.App. 1 Cir. 1984).
 

 Article 112 directs that a court
 
 fixing
 
 spousal support consider the “income and means of the parties, including the liquidity of such means.” The terms “income” and “means” are not defined in the codal articles pertaining to spousal support.
 
 See
 
 LSA-C.C. art. Ill et seq.; LSA-R.S. 9:321 et seq.
 

 However, we note that pursuant to LSA-R.S. 9:315.2,
 
 child
 
 support is based on the combined adjusted gross income of the parties. “Adjusted gross income” is defined by LSA-R.S. 9:315(0(1) as “gross income, minus amounts for preexisting child support or spousal support obligations paid to another who is not a party to the proceedings, or on behalf of a child who is not the subject of the action of the court.” As provided in LSA-R.S. 9:315(C)(3)(a) “gross income” includes “income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, recurring monetary gifts, annuities, capital gains,
 
 social security benefits,
 
 workers’ compensation benefits, basic and variable allowances for housing and subsistence from military pay and benefits, unemployment insurance benefits, disaster unemployment assistance received from the United States Department of Labor,
 
 disability insurance benefits,
 
 and spousal support received from a preexisting spousal support obligation.” (Emphasis added.)
 

 Black’s Law Dictionary defines “income” as “money or other form of payment that one receives, usu. periodically, from em
 
 *181
 
 ployment, business, investments, royalties, gifts, and the like,” and “means” is defined as 113“[a]vailable resources, esp. for the payment of debt; income.” Black’s Law Dictionary 766 and 995 (7th ed.1999).
 

 Clearly social security benefits (denominated “old-age insurance benefits” in 42 U.S.C. § 402) and social security disability benefits (denominated “disability insurance benefits” in 42 U.S.C. § 423) are funds a recipient may use to defray living expenses and other debts, and thus fall within the generally accepted legal meaning of “income and means.” No Louisiana legislative enactment suggests an intent to restrict or curtail the generally accepted meaning of “income and means.” Contrarily, the statutes cited herein above, applicable to
 
 child
 
 support, specifically define income as encompassing both of these forms of social security. Therefore, we conclude that the correct legal interpretation of LSA-C.C. arts. Ill and 112 is such that the terms “income and means” encompass a spouse’s social security benefits, whether received as old-age insurance benefits or disability insurance benefits.
 

 After careful consideration of this issue, we reaffirm this court’s prior recognition in
 
 Griffin
 
 (citing with approval
 
 Robinson)
 
 that social security benefits are income for purposes of computing spousal support. We further interpret herein “income and means” as encompassing social security disability benefits as well, and respectfully reject the Third Circuit rationale expressed in
 
 Davis
 
 and
 
 January.
 

 Accordingly, we find no merit in Ms. Prestenback’s first assignment of error contending the district court erred in considering her social security disability benefits as income.
 

 Itemized, Expenses
 

 Ms. Prestenback also assigns as error the exclusion by the district court of certain expenses that she claimed could be considered for purposes | uof spousal support, which the district court found did not fall within his definition of “needs” (stated as being restricted to housing, food, medical, and clothing expenses). We agree with Ms. Prestenback that the district court’s definition of “needs” was impermis-sibly restrictive. As referenced herein above, the jurisprudence of this state directs that allowable “needs” expenses are determined on a common-sense basis and may include: food, shelter (this includes mortgage payments, utilities, and other related expenses), clothing, transportation or automobile expenses, medical and drug expenses, utilities, household maintenance, and the income tax liability generated by alimony payments.
 

 Regarding Ms. Prestenback’s claimed expenses of $70.00 per month for lawn maintenance and $76.87 per month for a cellular phone, we find the district court erred in excluding these expenses. Uncontradicted evidence was presented by Ms. Prestenback that her medical condition (lupus) rendered her unable to care for her lawn and made her having a cellular phone prudent because of her frequent medical appointments and intermittent medical emergencies.
 
 [7]
 
 Further, Ms. Pres-tenback’s expenses of $50.00 per month for dental care and $50.00 per month for eye care should be classified as medically-related expenses and therefore “needs.” Additionally, Ms. Prestenback’s inclusion of a $50.00 monthly payment toward her federal income tax liability is an allowable
 
 *182
 
 expense that is well-established.
 
 [8]
 
 We also find error in the district court’s reduction of Ms. |1sPrestenback’s monthly food and household supply expense from $450.00
 
 to
 
 $350.00, since Ms. Prestenback’s testimony was uncontradicted that she spends $15.00 per day on- food and household supplies; no evidence was presented showing this sum to be unreasonable. Other than these items, we find no abuse of discretion in the district court’s evaluation of Ms. Presten-back’s expenses.
 

 After adding the improperly excluded expenses to the other allowable expenses, Ms. Prestenback’s monthly expenses total $1,934.98. She receives $942.00 in social security disability benefits. Thus Ms. Prestenback needs an additional $992.98 per month to meet her needs.
 

 When a spouse has proven insufficient means of support, inquiry into the other spouse’s financial means becomes relevant.
 
 Wascom v. Wascom,
 
 97-0547 at p. 4, 713 So.2d at 1273-4. Mr. Prestenback introduced evidence at the trial of this matter showing that his monthly gross income from his employment at Georgia Gulf is $6,855.80, from which $2,130.72 in itemized payroll deductions are taken, leaving a net monthly income of $4,725.08. Mr. Prestenback itemized his monthly living expenses of $3,629.12
 
 [9]
 
 as follows: mortgage note— $432.36; homeowner’s insurance — $380.00; yard care — $30.00; pest control — $15.00; food — $500.00; car note — $100.76; car maintenance — $335.00; gas — $300.00; clothing — $30.00; medications — $30.00; household supplies — -$50.00; personal grooming — $25.00; water — $30.00; electric — $200.00; cable — $90.00; natural gas — $80.00; household phone — $80.00; cellular phone — $130.00; Sam’s credit card payment — $75.00; Republic Finance payment — $96.00; Andre’s Hardware payment — $25.00; personal loan payment to Pam and Johnny Bourke — $100.00; | ¶ fientertainment/holiday/birthday/extr a curricular activities — $310.00; attorney fees — $100.00; and pet food and grooming — $85.00. Deducting Mr. Prestenback’s itemized monthly living expenses of $3,629.12 (excluding the prior alimony award of $1,000.00) from his net income of $4,725.08 leaves $1,095.96 in disposable income. However, we note that several items of Mr. Prestenback’s monthly living expenses are not properly included as “needs;” these include: entertainment/holiday/birthday/extra curricular activities, attorney fees, pet food and grooming. After deducting these amounts, Mr. Prestenback is left with monthly disposable income of $1,590.96. Therefore, we conclude that Mr. Prestenback has sufficient income and means to pay to Ms. Prestenback spousal support, in the amount of $992.98 per month, to enable her to meet her monthly needs; the district court judgment will be amended accordingly.
 

 Since the district court decreed that Mr. Prestenback was entitled to recoup $4,416.04 in “overpayments” from Ms. Prestenback upon entry of its April 18, 2007 judgment reducing Ms. Prestenback’s spousal support from $1,000.00 to $540.00
 
 *183
 
 per month (recoverable by him “in the form of reducing his monthly spousal support payments by $60.00 each month, until the sum is paid in full”), and the district court judgment was not suspended by this appeal, a spousal support arrearage may have resulted. We remand this matter to the district court for a determination on this issue, and for implementation of a payment plan to eliminate any arrearage owed by Mr. Prestenback to Ms. Presten-back.
 

 CONCLUSION
 

 For the reasons assigned herein, we affirm the judgment of the district court in part, and amend the judgment in part to order Mr. Prestenback to pay final periodic spousal support to Ms. Prestenback in the amount of [17$992.98 per month, retroactive to June 13, 2006; the matter is remanded to the district court for a determination of whether any arrearage is owed by Mr. Prestenback. All costs of this proceeding are to be borne by Mr. Presten-back.
 

 AFFIRMED IN PART; AMENDED; AFFIRMED AS AMENDED; REMANDED.
 

 [1]
 

 1. Article 111 was amended by 2006 La. Acts, No. 749, § 1 to insert "who is in need of support and who is” preceding "free from fault” and to delete", based on the needs of that party and the ability of the other party to pay,” following "terminate the marriage”. Act 749 became effective on June 30, 2006, and Section 2 of the Act provided, "The provisions of this Act are interpretative and shall apply to pending claims for final periodic support in which trial has not yet commenced as of the effective date of this Act.” In the instant case, while the motion before the trial court was filed on June 13, 2006, a hearing on the matter did not take place until August 26, 2006 before the district court hearing officer, with a final trial in the matter conducted before the trial judge on April 4, 2007. Therefore, Act 749 is applicable to this case.
 

 [2]
 

 2. Article 112 was amended by 2006 La. Acts, No. 749, § 1, and is applicable to the case before the court as stated hereinabove. Article 112 previously provided:
 

 A. The court must consider all relevant factors in determining the entitlement,
 
 *177
 
 amount, and duration of final support. Those factors may include:
 

 (1) The needs of the parties.
 

 (2) The income and means of the parties, including the liquidity of such means.
 

 (3) The financial obligations of the parties.
 

 (4) The earning capacity of the parties.
 

 (5) The effect of custody of children upon a party’s earning capacity.
 

 (6) The time necessary for the claimant to acquire appropriate education, training, or employment.
 

 (7) The health and age of the parties.
 

 (8) The duration of the marriage. (9)The tax consequences to either or both parties.
 

 B. The sum awarded under this Article shall not exceed one-third of the obligor’s net income.
 

 [3]
 

 . Prior to its revision and reenactment as Article 112 by 1997 La. Acts, No. 1078, § 1, eff. Jan. 1, 1998 (as amended by 2006 La. Acts, No. 749, § 1, eff. June 30, 2006), former LSA-C.C. art. 160 (redesignated as Article 112 by 1990 La. Acts, Nos. 1008 and 1009) provided that “the court shall consider” the enumerated factors. (Emphasis added.)
 
 See also
 
 58 La.L.Rev. at 902-3.
 

 [4]
 

 . “Common sense dictates that the term 'maintenance', while meaning [p]rimarily food, clothing and shelter, does include such items as reasonable and necessary transportation or automobile expenses, medical and drug expenses, utilities, household expenses, and the income tax liability generated by the alimony payments made to the former wife.”
 
 Bernhardt v. Bernhardt,
 
 283 So.2d at 229.
 

 [5]
 

 . This court in
 
 Griffin v. Griffin
 
 cited
 
 Robinson v. Robinson
 
 with approval and went on to hold that unemployment compensation should also be treated as income for purposes of calculating spousal support.
 

 [6]
 

 . The
 
 Robinson
 
 court cited 42 U.S.C 659, which appears in Chapter 7, “Social Security,” of Title 42, “Public Health and Welfare,” and provides in part:
 

 Notwithstanding any other provision of law (including section 407 of this title and section 5301 of Title 38), effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the Armed Forces of the United States, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to withholding in accordance with State law enacted pursuant to subsections (a)(1) and (b) of section 666 of this title and regulations of the Secretary under such subsections, and to any other legal process brought, by a State agency administering a program under a State plan approved under this part or by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony.
 

 [7]
 

 .
 
 See also Mayes v. Mayes,
 
 98-2228 at p. 8, 743 So.2d at 1262 (wherein this court ruled that mobile telephone and lawn maintenance expenses were appropriately included in the trial court's calculation of spousal support for a single mother of two pre-school aged children, and who worked every other weekend).
 

 [8]
 

 . The tax consequences of spousal support to either or both parties may be considered by the trial court in the determination of a support award. LSA-C.C. art. 112(B)(8) and Comment (e);
 
 Bernhardt v, Bernhardt,
 
 283 So.2d at 229;
 
 Mayes v. Mayes,
 
 98-2228 at p. 7, 743 So.2d at 1262;
 
 Fusilier v. Fusilier,
 
 464 So.2d at 1070;
 
 Arable v. Arable,
 
 447 So.2d at 24.
 
 See also McCarty v. McCarty,
 
 2000-2212 at p. 5, 798 So.2d at 198.
 

 [9]
 

 . We exclude the prior $1,000.00 per month spousal support obligation from this listing of Mr. Prestenback's monthly living expenses for purposes of determining how much disposable income he has available for the payment of his spousal support obligation.